[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The following facts are taken from the Return of Record (hereinafter the "Record").
On March 16, 1990, Emanuel Hatzikostas (hereinafter the "plaintiff") filed an application with the defendant, Planning and Zoning Commission of the Town of Stonington (hereinafter the "Commission") for a special use permit and site plan approval for eight townhouses on a portion of land owned by the plaintiff. (Record, Exhibit IA). The property is located on Route 2 and Route 49 in Pawcatuck, Town of Stonington, Connecticut. Id. Two structures were proposed, each containing four townhouses. Id.
A public hearing on the application was held on May 10, 1990 (Record, Exhibit IV). The commission denied the plaintiff's application and gave the following reasons in the Record of Decision of July 5, 1990:
 1. It is a new subdivision without a subdivision plan. CT Page 356
 2. The new building appears to be in the rear yard setback and no variance is noted on the plan.
3. The integral lot areas shown are not adequate.
 4. The plan does not show the required design open spaces.
5. The front yard setback is not properly calculated.
6. The F.A.R. is incorrectly calculated.
 7. The side yard setback as shown on the plan does not agree with the chart.
 8. The curb cuts onto Route 2 pose a safety issues (sic) as per the Board of Police Commissioners letter dated April 6, 1990.
(Record, Exhibit IT). Notice of the decision was published in the New London Day and the Westerly Sun on July 13, 1990. (Record, Exhibits IP, IQ, and IR).
The plaintiff, on July 27, 1990 filed an appeal with the superior court. Subsequently the plaintiff died. (Plaintiff's Exhibit B). A motion to cite in the administrator, George E. Hatzikostas (hereinafter the "administrator"), as a substitute for the deceased plaintiff was made with the court on April 9, 1991. The motion was granted by the court, Teller, J., on June 24, 1991 The administrator is also the successor record owner of the subject property. (Plaintiff's Exhibit C).
A hearing was held on this matter on October 16, 1991
DISCUSSION
A. Aggrievement
An owner of the subject property is aggrieved and may appeal a planning commission's decision. Bossert Corp. v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39 (1968). The plaintiff presented evidence which shows that Emanuel Hatzikostas was the owner of the subject property throughout the time that the proceedings took place before the commission and until his death after this appeal was filed. (Plaintiff's Exhibit B. . .). The administrator, who was cited into this appeal as a party plaintiff submitted a certified copy of a deed showing that he is the successor owner to the subject property. (Plaintiff's Exhibit B and C; Motion to Cite in Party Plaintiff; Order of CT Page 357 Judge Teller on June 24, 1991).
Based on the foregoing evidence, the court finds that the plaintiff is aggrieved by the commission's decision.
B. Timeliness
An appeal to the superior court "shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of decision was published as required by the general statutes." General Statutes Section 8-8 (b).
Notice of the decision was published on July 13, 1990, in the New London Day and the Westerly Sun. (Record, Exhibits IP, IQ and IR). Service was made on the defendant on July 26, 1990. Sheriff's Return). Plaintiff filed this appeal with the superior court on July 27, 1990.
This appeal was made in a timely fashion in accordance with General Statutes Section 8-8 (b).
C. Scope of Judicial Review
Judicial review of a zoning matter is limited in scope. Horn v. Zoning Board of Appeals of the City of Norwalk, 18 Conn. App. 674,676, 559 A.2d 1174 (1989). On appeal, a court will only disturb a commission's decision if the decision is found to be "unreasonable, arbitrary or illegal." Schwartz v. Planning and Zoning Commission of the Town of Hamden, 208 Conn. 146, 152,543 A.2d 1339 (1988). The court must review the record to determine if the record supports the decision reached. Primerica v. Planning and Zoning Commission of the Town of Greenwich,211 Conn. 85, 96, 558 A.2d 646 (1989). "The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. Primerica v. Planning and Zoning Commission of the Town of Greenwich, supra, 96.
D. Analysis
Plaintiff argues that the commission's decision should be overturned because the commission acted arbitrarily, illegally and the decision was an abuse of discretion. Plaintiff claims that the commission, in deciding against the application, ignored its own regulations. The commission states that it followed the regulations in reaching its decision, that the decision is supported by the record and that any one of the eight reasons stated in the record of decision would support the defendant's denial of the application. CT Page 358
I. REASONS FOR DENIAL NUMBER EIGHT
The eighth reason for denial given by the commission in the record of decision was "(t)he curb cuts onto Route 2 pose a safety issues (sic) as per the Board of Police Commissioner's letter dated April 6, 1990." (Record, Exhibit IT).
Before the commission may approve a proposal, section 5.2(c) of the Town of Stonington Zoning Regulations (hereinafter the "regulations") require that the commission ensure "(t)hat transportation services are adequate and no traffic congestion or undue traffic generation will result that would cause a deleterious effect on the local welfare or safety of the motoring public." (Record, Exhibit IW, p. 70). Section 5.2(g) of the regulations requires that a proposal will do nothing that "will impair the public health, safety and welfare of the people of the Town of Stonington." Id.
Evidence before the commission indicated that the area surrounding the proposed application suffered from traffic congestion. (Record, Exhibit, IC, Section II, pp. 1-20 Exhibit IT). The Board of Police Commissioners and the Town Planner contacted the Commission with concerns of traffic safety, volume and control. (Record, Exhibits II, IL and IM).
Issues of traffic congestion and safety were in the record before the defendant. Also, under the regulations, such traffic problems must be corrected before any approval may be given by the commission. See Section 5.2(c) of the regulations. Therefore, the commission's eighth reason for denial is supported by the record and in and of itself is sufficient to require dismissal of the plaintiff's appeal.
II. REASONS FOR DENIAL NUMBERS ONE THROUGH SEVEN
Although the eighth reason stated by the commission for its denial of the plaintiff's application is adequately supported by the evidence in the record and therefore is sufficient in and of itself to require dismissal of this appeal, there is also sufficient evidence in the record to support the commission's other reasons for the denial of the plaintiff's application.
 A. The first reason given by the commission in denying the application is "(i)t is a new subdivision without a subdivision plan." (Record, Exhibit IT).
 Plaintiff argues that while it was combining lots to be developed as a unit, this plan did not constitute a subdivision. The commission states that when it questioned the plaintiff on this matter, plaintiff agreed to provide CT Page 359 the commission with further documentation but never did so. review of the record indicates that not only did the plaintiff agree to provide further documentation, but that the plaintiff also admitted before the commission that upon a review of the plans, a person could view the application as constituting a new subdivision. (Record, Exhibit IV, p. 45).
 B. The commission's second reason for denying the application was the "(t)he new building appears to be in the rear yard setback and no variance is noted on the plan." (Record, Exhibit IT).
 Section 4.21 of the regulations declare that a yard must be 25 percent of depth. (Record, Exhibit IW, p. 53). Plaintiff claims that 25 percent of depth is provided for in the application. The commission argues that the data provided by the plaintiff represents the rear yard setback to be less than 25 percent of the depth required.
 The depth of the lot is 235 feet. (Record, Exhibit IB, p. 1). Plaintiff's application displays a rear yard setback of 43 feet. (Record, Exhibit IA, p. 1). Twenty-five percent of 235 feet is 58.75 feet. Therefore, the plaintiff's application does not have a rear yard setback of 25 percent as required by the regulations.
 C. The third reason given by the commission in denying the application was "(t)he integral lot areas shown are not adequate." (Record, Exhibit IT).
 Section 1.32.47 of the regulations define an integral lot area as follows:
 (t)he area associated with a single dwelling unit and accessible from that unit by access opening onto it at ground level and unoccupied by drives, walks, parking, accessory uses or building, to be designated for private use of that unit only.
(Record, Exhibit IW, p. 11). Section 4.27E of the regulations state that "(e)ach dwelling unit must have an integral area of 1,000 square feet." Plaintiff argues that 8,000 square feet was provided for as integral lot areas and the regulations were satisfied. The commission stated that the integral lot area did not meet the requirements of the regulations because the areas provided for were not usable. The Town Planner's memorandum of May 10, 1990 states:
4. Integral Lot Area — As defined in Stonington CT Page 360 zoning Regulations, must be designated for private use of a unit. The integral lot area behind the rear townhouses is established by two retaining walls and a stairs (sic) for access. The slope of this area is between 40% and 50%. Area with that steep of a slope is not usable except for possibly gardening. The remaining portion of the integral lot areas is at the base of the wall and may experience some drainage problems. I don't feel that this area, as proposed, fits the intent of integral lot area.
(Record, Exhibit IL, p. 4). The commission's third reason for denial is supported by the record.
 D. The fourth reason of denial given is that "(t)he plan does not show the required design open spaces." (Record, Exhibit IT).
 Plaintiff contends that the regulations have been met and that the plaintiff's application provided for the required open spaces. In opposition, the commission declares that the open spaces have not been properly designated.
Regulation 5.4-6E states:
 Site plans shall include spaces that provide open areas for each project as follows:
 1. Integral lot area for each unit (see Special Regulations in Articles III and IV).
 2. Design open spaces for each structure or group of structures of six or more units of 100 square feet per each unit.
 3. Common recreation spaces for community activities and recreation for each increment of 24 units of one space of 10,000 square feet each.
 4. Neighborhood area (parks or playground) of one acre or more per every 30 units.
 5. Thematic element — play equipment or street furniture.
 While the site application shows the integral lot area, it does not designate open spaces. (Record, Exhibit IB, p. 1). Therefore, the site plan did not comply with CT Page 361 regulation 5.4-6E.
 E. In the fifth reason for denial, the commission held that "(t)he front yard setback is not properly calculated." (Record, Exhibit IT). Sections 7.4-1 and 4.21 of the regulations require the front yard to be 50 feet from the centerline of Route 2 plus an additional 10 feet. (Record, Exhibit IW, pp. 116 and 53).
 F. The commission, in the sixth reason of denial, stated that "(t)he F.A.R. (floor area ratio) is incorrectly calculated." (Record, Exhibit IT). Section 4.21 of the regulations allows a floor area ratio of .30. (Record, Exhibit IW, p. 53).
 G. The seventh reason of denial given by the commission was because "(t)he side yard setback as shown on the plan does not agree with the chart." (Record, Exhibit IT). Section 4.21 of the regulation allows a setback of at least 10 feet. (Record, Exhibit IW, p. 53).
In each of these three instances, the plaintiff claims that its calculations and representations conform with the requirements of the regulations. The commission declared that there were irregularities and inaccuracies with respect to the plaintiff's calculations. (Record, Exhibit IV). Therefore, the commission sets forth the position that in reasons five through seven, the plaintiff did not comply with Section 5.2H of the regulations. Section 5.2H states that before the commission may approve an application, "(a)ll applicable regulations (State, I federal and local) (must be) complied with, satisfying all design, procedural and review requirements. (Exhibit IW, p. 70).
In reasons one through seven, the application for the special permit and site plan did not meet the requirements of the commission as set forth in the regulations. Reasons one through seven of the Record of Decision denying the plaintiff's application are supported by the record. Therefore, reasons one through seven in the Record of Decision are sufficient to support the decision of the commission.
CONCLUSION
The commission's reasons for denial, specifically those involving traffic concerns, are adequate and supported by the record before the court. Therefore, the plaintiff has failed to prove that the commission has acted arbitrarily or illegally or that the decision was an abuse of discretion. Accordingly, the plaintiff's appeal is dismissed. CT Page 362
HURLEY, J.